# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of:

Stadium Self Storage, 4000 West Burnham Street, Unit 9031,
Milwaukee, Wisconsin, more fully described in Attachment
A.

)
)
)
)
)
)

Case No. **20m805**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Stadium Self Storage, 4000 West Burnham Street, Unit 9031, Milwaukee, Wisconsin, more fully described in
Attachment A.

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841(a)(1) and 846

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Tyler Fink, USPIS Postal Inspector
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: _January 6, 2020_

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin                    William E. Callahan, Jr.    , U.S. Magistrate Judge

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

I, Tyler Fink, being first duly sworn, hereby depose and state as follows:

## I. BACKGROUND

1. I am a Postal Inspector with the United States Postal Inspection Service (USPIS). I have been employed by the USPIS since February 2017.

2. The USPIS is the primary investigative arm of the United States Postal Service (USPS) and is charged under Title 18, United States Code, 3061 with the enforcement of laws governing the use and movement of the United States Mail, including, but not limited to, the misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, identity theft, and narcotics trafficking involving the United States Mail.

3. I am currently assigned to the Milwaukee Office multi-functional team as well as the High Intensity Drug Trafficking Area (HIDTA) Interdiction Initiative Task Force. The multi-function team investigates mail theft, fraud, the theft of Postal property, prohibited mailings, controlled substances, and other matters related to the Postal Service. I have received advanced training by the USPIS in the investigation of controlled substances or proceeds/payments being transported through the United States. The Milwaukee Field Office's multi-function team has intercepted numerous parcels, which were found to contain narcotics or proceeds of narcotics trafficking and other criminal activity. Prior to my employment with the USPIS, I was employed by the City of Creve Coeur, Missouri Police Department in the Patrol Division for approximately three years as a Police Officer. While working as a Police Officer, I received extensive training in narcotics investigations.

4. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws including Title 21, United States Code, Sections 841(a)(1) and 846 (possession with intent to distribute a controlled substance and conspiracy to possess with intent to distribute a controlled substance), and other related offenses. I have had both formal training and have

1

participated in numerous complex drug trafficking investigations, including one using wiretaps. More specifically, my training and experience includes the following:

    a. I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

    b. I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

    c. I have participated in several search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

    d. I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

    e. I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

    f. I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

    g. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

    h. I have assisted in court authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

    i. I know that drug traffickers often put their telephones in nominee names in

2

order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5. I have served as the affiant on over 60 warrants in federal court. Based on my training received at the USPIS Career Development Unit, personal experience, on the job training, and working with other Postal Inspectors and Wisconsin HIDTA drug task force officers, I know narcotics, drugs, paraphernalia, controlled substances, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through the USPS system, and I am familiar with many of the methods used by individuals who attempt to use the USPS to illegally distribute controlled substances.

6. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.

7. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom I have had regular contact regarding this investigation.

8. Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

## II. PROPERTIES FOR WHICH SEARCH WARRANTS ARE SOUGHT

9. For the reasons discussed herein, there is probable cause to believe that the premises located at and in the City and County of Milwaukee, Eastern District of Wisconsin, more fully described in Attachment A, are items that constitute evidence of

3

illegal narcotics possession and/or distribution, in violation of Title 21, United States Code, Sections 841 and 846.

**A.** **U-Haul Moving & Storage**, 1500 South 1st Street, Unit 1310, Milwaukee, Wisconsin;

**B(a).** **Stadium Self Storage**, 4000 West Burnham Street, Unit 4510, Milwaukee, Wisconsin;

**B(b).** **Stadium Self Storage**, 4000 West Burnham Street, Unit 9031, Milwaukee, Wisconsin;

**C(a).** **Public Storage**, 5014 South 13th Street, Unit 1102, Milwaukee, Wisconsin; and,

**C(b).** **Public Storage**, 5014 South 13th Street, Unit 3326, Milwaukee, Wisconsin.

## III. THE DRUG DETECTION CANINE

10. I know "Drug Detection Canines" are trained to detect the odor of controlled substances; that these substances include marijuana, cocaine, heroin, methamphetamine, as well as other dangerous drugs due to chemical processing similarities; that upon location of the odor of these controlled substances, the dog's behavior will change; that the dog is trained to come to a final response of biting and/or scratching, or sitting and staring, at the source of the odor; that this final response is called an **"Alert;"** furthermore, this final response or **"Alert"** may also indicate items recently contaminated with, or associated with, the odor of one or more of the controlled substances.

11. I know when a dog is trained to detect a substance, it learns to discriminate the odor vapor of that substance from other odors in the environment by reacting to the compound(s) that best help it earn reinforcement from the drug detection canine handler; that with sufficient training, the compound(s) whose detection most often results in reinforcement becomes the "odor detection signature."

### FLORIDA -v- JARDINES

12. I am also aware of the recent Supreme Court decision in *Florida -v- Jardines* that a police officer's use of a trained narcotics detection canine at the front door

4

of a home to reveal details inside that home, which the officer is unable to discover using the officer's ordinary powers of perception without a physical intrusion into the home, is a Fourth Amendment search requiring a warrant based on probable cause; that without a warrant a dog sniff was a governmental intrusion into the curtilage of a home and constitutes a search within the meaning of the Fourth Amendment because special protection is offered to the home and that the police violated *Jardines'* expectation of privacy by unlawfully entering his property without a warrant based on probable cause;

13.     I am further aware that the United States Supreme Court subsequently also held that the government's use of trained police dogs to investigation a home and/or apartment, and its immediate surroundings, is a "search" within the meaning of the Fourth Amendment; that in so holding, the Court relied on the special protections afforded to the home and the apartment dweller and the area immediately surrounding their home and/or their apartment, that is, the curtilage; that the Court went on to explain that while the knocker on the front door is treated as an invitation or license to attempt entry justifying  ingress to the home by solicitors, hawkers and peddlers of all kinds, it does not extend to a trained police dog to explore the area around the home in hopes of discovering incriminating evidence.

## IV.     PROBABLE CAUSE

14.     In September of 2018, case agents initiated an investigation into the Jose GONZALEZ-COLLADO Drug Trafficking Organization (DTO).     As part of the investigation, case agents have interviewed several confidential sources and have utilized one under cover law enforcement officer to complete 15 controlled purchases of cocaine and heroin from GONZALEZ-COLLADO or one of his associates.     As a result of the intelligence provided by the confidential sources and the controlled purchases, along with information obtained from other law enforcement officers, case agents have learned that GONZALEZ-COLLADO obtains kilogram amounts of cocaine via the United States Postal Service (USPS) from several known and unknown sources of supply in Puerto Rico, and is a leader of a large-scale cocaine and heroin distribution network operating in the Milwaukee metropolitan area.

5

15.     In October of 2018, case agents interviewed a confidential source (hereinafter CS-1). CS-1 stated GONZALEZ-COLLADO distributes large quantities of cocaine in Milwaukee, Wisconsin and the surround areas. CS-1 introduced Eric ROSA, a member of the GONZALEZ-COLLADO DTO, to an Undercover DEA Task Force Officer (TFO) herein referred to as "UC." During undercover contact with ROSA, the UC has purchased large quantities of heroin and cocaine from ROSA and ROSA'S sources of supply to include GONZALEZ-COLLADO.

16.     CS-1 cooperated with law enforcement from approximately September 2018 to present. CS-1 cooperated in exchange for consideration on a traffic related/Operating While Intoxicated offense. CS-1 has never been paid any sums of money for CS-1's cooperation with law enforcement. Thus far, the information provided by CS-1 has proven to be reliable and has been corroborated by, among other things, physical surveillance activities, USPS postal records, controlled buys and other confidential source information. According to law enforcement databases, CS-1 has been convicted of: Operating While Intoxicated and Operating After Revocation.

17.     According to a confidential source (hereinafter CS-2) GONZALEZ-COLLADO distributes kilogram level quantities of cocaine and heroin to customers in Milwaukee, Wisconsin. CS-2 further indicated that GONZALEZ-COLLADO obtains the cocaine, via the USPS, from a known and unknown source of supply based out of the U.S. Territory of Puerto Rico. Search warrants for USPS parcels, physical surveillance and information provided by CS-2 has shown that GONZALEZ-COLLADO and other members of the DTO will mail parcels, containing drug proceeds, to the source(s) of supply in Puerto Rico, via the USPS. GONZALEZ-COLLADO has prior arrests and convictions through the U.S. Territory of Puerto Rico for Felony Possession of Narcotics with Intent to Deliver.

18.     In October through December 2018, Wisconsin Division of Criminal Investigation (DCI) Special Agent (SA) Todd Higgins and Homeland Security Investigations (HSI) Special Agent (SA) Jeremy Dorn spoke with CS-2, who provided information that was reliable given that he/she made statements both against his/her

6

penal interest and later corroborated by other information gathered during the course of the investigation. CS-2 had known GONZALEZ-COLLADO for several months and, along with several of GONZALEZ-COLLADO's associates, shared an interest in working on automobiles. Given the CS-2's close association with GONZALEZ-COLLADO and his associates, CS-2 became privy to the illicit activity in which they engaged. Specifically, CS-2 said GONZALEZ-COLLADO supervised a drug-trafficking organization in the greater Milwaukee area. According to CS-2, GONZALEZ-COLLADO had cocaine sent, via USPS, from Puerto Rico to Milwaukee, Wisconsin. On several occasions GONZALEZ-COLLADO mentioned to CS-2 that GONZALEZ-COLLADO's drug source-of-supply resided in Puerto Rico (hereinafter the Puerto Rican drug source). GONZALEZ-COLLADO had numerous associates who agreed to receive the cocaine, which would be delivered to their home addresses in the Milwaukee area, via the USPS.

19. In October 2018, law enforcement encountered CS-2 at CS-2's residence located in the south side of Milwaukee, Wisconsin. CS-2 was identified as a co-conspirator in the Milwaukee based drug trafficking organization (DTO) which included GONZALEZ-COLLADO and ROSA. CS-2 admitted to receiving a parcel on behalf of GONZALEZ-COLLADO, which CS-2 stated contained contraband. The parcel contained approximately 3063 grams of field- tested cocaine, discovered by case agents during a search warrant and seizure. CS-2 was subsequently arrested by law enforcement and interviewed by SA Dorn and SA Higgins. CS-2 stated GONZALEZ-COLLADO rented storage space at a storage facility in Milwaukee County and used the storage rental as a narcotics "stash" location.

20. CS-2 actively cooperated with law enforcement from approximately October 2018 to January 2019. CS-2 is currently being utilized for information only and CS-2 expressed fears that CS-2's life would be endangered if the DTO discovered CS-2's cooperation with law enforcement. CS-2 stated that GONZALEZ-COLLADO and other members of the DTO have ceased communication with CS-2 as a precaution as a result of CS-2's arrest. CS-2 cooperated in exchange for consideration of leniency on charges for Possession of Cocaine with Intent to Deliver. CS-2 has never been paid any sums of

7

money for CS-2's cooperation with law enforcement. Thus far, the information provided by CS-2 has proven to be reliable and has been corroborated by, among other things, physical surveillance activities, USPS postal records, search warrants, controlled drug buys, undercover recordings and other confidential source information. According to law enforcement databases, CS-2 has been convicted of: Armed Robbery and Possession of a Controlled Substance.

### Controlled Purchases Involving ROSA and GONZALEZ-COLLADO

21. From December 2018 through October 2019, DEA TFO Michael Saddy (UC), acting in an undercover capacity, arranged controlled purchases on fifteen (15) different occasions of cocaine and heroin through ROSA in Milwaukee, Wisconsin. The below listed information is a synopsis of only a few of those controlled purchases of both cocaine and heroin.

22. On December 6, 2018, ROSA facilitated the purchase of 3.5 grams of cocaine from an individual later identified as Wilberto SANTIAGO-MARTINEZ. The UC picked up ROSA, and directed the UC to drive to 3223 West Lincoln Ave., Milwaukee, as ROSA was going to obtain the cocaine from a source of supply who is the owner of the barbershop, later identified as SANTIAGO-MARTINEZ. While awaiting the arrival of SANTIAGO-MARTINEZ, ROSA discussed his friend "Gordo" (later identified as GONZALEZ-COLLADO). ROSA told the UC his cocaine was supplied by "Gordo," who received it from Puerto Rico. ROSA claimed he was once able to obtain between ½ and one kilogram of cocaine with little difficulty, but was unsure if he could still obtain that quantity of cocaine. ROSA said a kilogram of cocaine would cost approximately $22,000. ROSA reiterated that the cocaine would come from Puerto Rico. The controlled purchase commenced and the undercover activity with ROSA and SANTIAGO-MARTINEZ was audio and video recorded.[1] The UC obtained the suspected cocaine from ROSA and the UC provided ROSA, with prerecorded U.S. Currency. Thereafter, the UC drove to a pre-

---

[1] All UC controlled buys were audio and video recorded.

determined location where investigators conducted a field test on a random sample of the suspected cocaine, obtaining positive results.

23. On December 20, 2019, the UC arranged for the purchase of approximately one ounce of cocaine from ROSA and SANTIAGO-MARTINEZ. During undercover contact with ROSA, ROSA stated the "guy" he (ROSA) had previously worked with became scared because cocaine laden packages were seized in the mail. ROSA stated at one time they were receiving "7K" or seven (7) kilograms of cocaine a week in the mail. I believe, based upon physical surveillance activities, controlled buys, search warrants, phone records, and other confidential source information that ROSA's statements pertained to GONZALEZ-COLLADO, search warrants and law enforcement seizures of USPS parcels. The UC was handed the purported ounce of suspected cocaine by SANTIAGO-MARTINEZ. Thereafter, the UC drove to a pre-determined location where investigators conducted a field- test on a random sample of the suspected cocaine, obtaining positive results.

24. On January 10, 2019, the UC arranged to purchase two ounces of cocaine from ROSA and SANTIAGO-MARTINEZ. While en route to the drug deal, ROSA said he intended to cut out SANTIAGO-MARTINEZ because GONZALEZ-COLLADO was returning to the business. ROSA commented that GONZALEZ-COLLADO's cocaine was a better quality, and that GONZALEZ-COLLADO offered more timely service than SANTIAGO-MARTINEZ. The UC agreed to purchase the cocaine from GONZALEZ-COLLADO. GONZALEZ-COLLADO, identified by the UC, approached the passenger side of the UC's vehicle and greeted the UC. GONZALEZ-COLLADO handed the UC a cup that held a clear plastic baggie containing a white powdery substance. The UC then gave $2,600 in U.S. currency to ROSA as payment. GONZALEZ- COLLADO directed ROSA to hold onto the money. After the deal, ROSA exited the UC's vehicle and departed the scene with GONZALEZ-COLLADO. The UC drove to a pre-determined location where investigators conducted a field- test on a random sample of the suspected cocaine, obtaining positive results.

9

25. On February 7, 2019, the UC contacted ROSA and arranged for the purchase of two ounces of cocaine and ten grams of heroin from ROSA and GONZALEZ-COLLADO. On February 21, 2019, the UC and ROSA agreed on a purchase price of $3,400 for two ounces of cocaine and ten grams of heroin, and agreed to conduct the drug transaction the following day, February 22, 2019. On February 22, 2019, surveillance units observed a blue Toyota park behind the UC vehicle, where Rosa was also located. ROSA exited the UC vehicle and stopped at the passenger side window of the blue Toyota. ROSA immediately returned to the UC vehicle and provided two clear baggies to the UC in exchange for $3,400 in U.S. currency. ROSA exited the UC vehicle and the UC was followed by surveillance units to a pre-determined location. The suspected controlled substances field-tested positive for cocaine and heroin, respectively.

26. On March 29, 2019, ROSA contacted the UC and began to facilitate a narcotics transaction for three (3) ounces cocaine and 20-grams of heroin in exchange for $5,500.00. On April 17, 2019, ROSA directed the UC to drive and park at El Rey Grocery Store at 3524 West Burnham Street in Milwaukee, Wisconsin. Just prior to the deal, law enforcement officers conducting surveillance observed GONZALEZ-COLLADO driving past El Rey Marketplace on two (2) occasions. Shortly thereafter, ROSA drove up and parked. ROSA entered the undercover car and provided the cocaine and heroin in exchange for $5,500.00 in U.S. currency. ROSA exited the UC vehicle and the UC was followed by surveillance units to a pre-determined location. The suspected controlled substances field-tested positive for cocaine and heroin, respectively. After the transaction, surveillance observed a black Nissan Titan occupied by GONZALEZ-COLLADO at the entrance way of the **Stadium Self Storage** at **4000 West Burnham Street** as well as ROSA's vehicle. An additional black Honda or Toyota parked near the two. Case agents believe that the driver of this vehicle conducted himself in a manner consistent with counter surveillance. Law enforcement surveillance noted that this person's features were similar to Vladimir RODRIGUEZ-RODRIGUEZ. A case agent observed the Nissan truck, operated by GONZALEZ-COLLADO, park next to the storage unit located in the far west row of units, just to the south of an opening that divided two

10

of the far west buildings. The Nissan truck was parked directly to the north of a tan in color mid-sized SUV. A couple minutes later, GONZALEZ-COLLADO exited the storage unit with another unknown male. GONZALEZ-COLLADO threw a bag into the front passenger seat and entered the Nissan Titan. The other male entered a tan SUV and both vehicles drove away.

27. On October 2, 2019, the UC contacted ROSA and arranged for the purchase of one ounce of cocaine and one ounce of heroin from ROSA and GONZALEZ-COLLADO. The UC and ROSA agreed on a purchase price of $3,600 for one ounce of cocaine and one ounce of heroin. On October 3, 2019, surveillance units observed ROSA and the UC enter ROSA's vehicle. ROSA provided two clear baggies to the UC in exchange for $3,600 in U.S. currency. The UC exited the vehicle and the UC was followed by surveillance units to a pre-determined location. The suspected controlled substances field-tested positive for cocaine and heroin, respectively.

## Court Authorized Interceptions

28. During this investigation, law enforcement realized that although some normal investigative procedures were successful, other procedure have been tried and failed, reasonably appear unlikely to succeed in achieving all the objectives of this investigation , or were too dangerous to employ. Therefore, in order to identify the organization's source(s) of supply at the highest-level possible and to identify unknown coconspirators and to disrupt and dismantle this organization's drug-distribution network both in Milwaukee, Puerto Rico and/or elsewhere, it was necessary to seek authorization to intercept wire and electronic communication on members of this organization.

29. The first order for interception was authorized on June 20, 2019, for TARGET TELEPHONE-1 found to be used by ROSA. Since the first Order, there have been a total of fourteen (14) Target Telephones for which interceptions of oral and /or electronic communications were judicially authorized.

30. On July 25, 2019, United States District Judge, J.P. STADTMUELLER of the United States District Court, Eastern District of Wisconsin, authorized the (1) Interception

11

of Wire and Electronic Communication, (2) the Real Time Seizure of Requested Location Information, and (3) the Use of a Pen Register and Trap and Trace Device for the T-Mobile Wireless Telephone Numbers (920) 492-6440 (TT4) and (708) 982-6640 (TT5). The investigation revealed TT4 was utilized by Marcos APONTE-LEBRON and TT5 was utilized by GONZALEZ-COLLADO. Marcos APONTE-LEBRON has been identified as a facilitator and who obtained USPS suspected cocaine laden parcels from the Puerto Rican drug source on behalf of the GONZALEZ-COLLADO. APONTE-LEBRON works as a distributor of cocaine for the DTO.

## A. UHAUL MOVING AND STORAGE

31. Jose M. AVILES-GONZALEZ is a Puerto Rican male born June 12, 1994. As a result of surveillance activities, intercepted communications and subpoenaed information, investigators are aware AVILES-GONALEZ and his girlfriend, Daisy VELEZ-COLLET, currently reside at 1630 South 6th Street, Apartment 203, Milwaukee, Wisconsin 53204. AVILES-GONZALEZ uses a cellular telephone assigned number (414) 393-7182, which has been intercepted over the Target Telephones. During the course of the interception period, intercepted communications have occured between AVILES-GONZALEZ and coconspirators, revolving around narcotics trafficking. AVILES-GONZALEZ has been identified as an upper echelon distributor, who obtains distributable amounts of illegal narcotics from GONZALEZ-COLLADO and the DTO.

32. On November 6, 2019, case agents intercepted multiple calls between TARGET TELEPHONE-5, (i.e. GOZALEZ-COLLADO), and (414) 412-7861 (i.e. AVILES-GONZALEZ). During the intercepted calls, AVILES-GONZALEZ provided directions to GONZALEZ-COLLADO on how to get to his residence. GONZALEZ-COLLADO asked, "Viejo [APONTE-LEBRON, another conspirator] is at Walmart so should I go to?" AVILES-GONZALEZ replied, "No, I no longer live there. Where are you?" and "Come to Becher Street." Becher Street is approximately four blocks south of AVILES-GONZALEZ's residence. Later in another intercepted call, AVILES-GONZALEZ told GONZALEZ-COLLADO, "I'm on 6th and Lapham Court parked on the side of the

apartments." The Golden Domes Apartments are located on the southeast corner of South 6th Street and West Lapham Boulevard.

33. On December 3, 2019, case agents initiated surveillance at the Golden Domes Apartments, located at 1620-1650 South 6th Street, Milwaukee. At approximately 3:29 p.m., Detective Migazzi observed AVILES-GONZALEZ walk out of the entrance doors addressed to 1650 South 6th Street, Milwaukee. I am aware the interior of the apartment complex connects the units addressed at 1630 South 6th Street with the units addressed at 1650 South 6th Street. AVILES-GONZALEZ walked out of the entryway to the apartments with two small children. At 3:30 p.m., case agents observed AVILES-GONZALEZ putting the children in a burgundy, 2007 Ford Explorer bearing Wisconsin registration: AGG1423. One of the case agents placed a phone call to AVILES-GONALEZ's known telephone number (414) 393-7182. Detective Migazzi observed AVILES-GONZALEZ answer the phone, confirming that AVILES-GONZALEZ was the user of (414) 393-7182. AVILES-GONZALEZ said "hello" twice and then began speaking in Spanish. A check of the aforementioned vehicle's registration through the Wisconsin Department of transportation revealed that it listed Jose M. Aviles Gonzalez, (DOB: 06/12/1994), with a listed address at 753 S. 24th St., Milwaukee, Wisconsin 53204.

34. On December 3, 2019, after reviewing the USPS business records, I located a parcel originating in western Puerto Rico and destined for and destined for 2426 South 9th Place, Milwaukee, Wisconsin. The parcel was addressed to a "Julio E. Seda." CS-2 identified a photograph of Julio SEDA-MARTINEZ as the subject "Bebo" who is also a facilitator and who obtained USPS cocaine laden parcels from the Puerto Rican drug source, on behalf of GONZALEZ-COLLADO. CS-2 is aware that SEDA-MARTINEZ would also send 10-20 thousand dollars to the Puerto Rican drug source, on behalf of GONZALEZ-COLLADO. According to a law enforcement database and the Wisconsin Department of Transportation, SEDA-MARTINEZ is not associated with this address. A review of USPS records revealed that the parcel weighed 9 lbs. 7 oz. Based upon this investigation, the weight of the parcel is consistent with approximately two kilograms of cocaine.

13

35.     On December 5, 2019, law enforcement conducted surveillance during the delivery of the suspected cocaine laden parcel mentioned above.  At approximately 8:04 a.m., case agents observed the parcel delivered to the front porch of the residence.  At approximately 9:34 a.m., Kendrick MALAVE-JUSINO came from inside the residence, retrieved the package, and brought it into the residence.  At approximately the same time, case agents intercepted a call.  During the call, GONZALEZ-COLLADO spoke with Marcos APONTE-LEBRON, a conspirator, and told him to go "pick that up at Kendrick's house.  That already arrived.  Run."  At approximately 9:45 a.m., a black Nissan Titan, bearing Wisconsin license plate RM5383, listing to Marcos APONTE-LEBRON, parked directly behind the residence in the alley.

36.     On December 5, 2019, at approximately 9:55 a.m., case agents intercepted a call between APONTE-LEBRON and GONZALEZ-COLLADO.  APONTE-LEBRON told GONZALEZ-COLLLADO to wait for him at the Speedway gas station and he will meet him there.  At 9:57 a.m., another call on TARGET TELEPHONE-9 was intercepted, again between APONTE-LEBRON and GONZALEZ-COLLADO, where APONTE-LEBRON stated he had the package and was headed to Speedway.  At 10:30 a.m., case agents observed GONZALEZ-COLLADO occupying a blue Ford F350 at the Speedway gas station located at 907 West Greenfield Avenue, Milwaukee, Wisconsin.  GONZALEZ-COLLADO met with a dark Green Infiniti QX4 bearing Wisconsin license plate AGV3229 registered to Enid MARTINEZ.  Case agents know MARTINEZ is the wife of APONTE-LEBRON.  Both vehicles left Speedway and headed east.  Case agents located both vehicles at the **U-Haul Moving and Storage** facility, located at **1500 South 1st Street, Milwaukee, Wisconsin**, where case agents observed GONZALEZ-COLLADO with another male and female by the Infiniti.

37.     On December 5, 2019, a case agent served a subpoena on **U-Haul Moving and Storage, 1500 South 1st Street, Milwaukee, Wisconsin**.  An examination of the records revealed that Daisy VELEZ-COLLET of 1630 South 6th Street, #203, Milwaukee, Wisconsin, is under a rental contract for storage unit number **1310.**  She rented the unit on October 10, 2019 and had paid for the space until December 9, 2019.  As of January 3,

2020, an examination of records reveal that VELEZ-COLLET remains the renter of this unit.

## B. STADIUM SELF STORAGE

### a. Unit 4510

### Suspicious USPS Parcels Involving Vladimir RODRIGUEZ-RODRIGUEZ

38.     On October 25, 2018, I intercepted a suspicious parcel addressed to 2166 S. 15th Street, Milwaukee, Wisconsin, and originating from Hormigueros, Puerto Rico. Although law enforcement officers attempted to deliver the parcel to the Milwaukee residence on October 29, 2018, no one was available to accept it. A postal employee left a notice in the mailbox directing the parcel's intended recipient to contact the USPS to claim the parcel. An unidentified male went to the Milwaukee Main Post Office and gave the USPS his contact number in reference to the undelivered parcel. The phone number was affiliated with BURGOS-RIVERA, an identified associate of GONZALEZ-COLLADO. I called the number and spoke to a heavily-accented male who agreed to retrieve the parcel. No one ever retrieved the parcel. On October 30, 2018, I searched the parcel pursuant to a federal search warrant and discovered approximately two (2) kilograms of cocaine. A search of law enforcement databases revealed the following individuals associated with the residence:

        a.  Juan Carlos VILLANUEAVA (DOB: 12/27/1971)

        b.  Sonia RODRIGUEZ-ROSA (DOB: 11/21/1965)

        c.  Hector Yamil RODRIGUEZ-RODRIGUEZ (DOB: 01/01/1992)

        d.  Vladimir RODRIGUEZ-RODRIGUEZ (DOB: 05/09/1994)

        e.  Ricardo BONILLA (DOB: 09/18/1971)

39.     On October 29, 2018, at approximately 1:48 p.m., Vladimir RODRIGUEZ-RODRIGUEZ was the subject of a traffic stop conducted by a Milwaukee Police Department patrol officer at or near 1937 West Forest Home Avenue, Milwaukee, WI 53204. Vladimir was driving a green Chevrolet Lumina (Wisconsin Dealer Plate: MV 4533) with accompanying VIN 2G1WL52M5V9142493. Hector Yamil RODRIGUEZ-RODRIGUEZ is a significant distributor for the DTO, and his brother, Vladimir

15

RODRIGUEZ-RODRIGUEZ, is his brother's trusted right-hand man, heavily involved in DTO operations. This vehicle was previously observed at 2166 South 15th Street, Milwaukee, Wisconsin. A search of the Chevrolet Lumina revealed approximately 1.65 grams of suspected marijuana, and a black semi-automatic handgun loaded with twelve unfired cartridges in the fully inserted magazine – six were found to be hollow-point and six were determined to be target rounds. In a post-*Miranda* statement, Vladimir admitted to being in possession of the marijuana and the firearm. Vladimir provided law enforcement his home address of 2166 South 15th Street, Milwaukee, Wisconsin. Furthermore, in April of 2019, a query of both Vladimir and Juan Carlos VILLANUEVA through the Wisconsin Department of Transportation listed their home address at 2166 South 15th Street, Milwaukee, Wisconsin.

40. On October 7, 2019, Vladimir was depicted on USPS surveillance video entering the Harbor Post Office, located at 1416 South 11th Street, Milwaukee, Wisconsin, while carrying a USPS medium flat rate parcel. Vladimir paid $14.35 for the parcel to be shipped to Aguada, Puerto Rico, which is a municipality in western Puerto Rico. The handwritten shipping label on the parcel indicated the sender was "Rosa Concepcion, 2448 S 5 Pl., Milwaukee WI 53215." A search of a law enforcement database revealed no person with this name lived at this address. The parcel was addressed to a "Carlos Concepcion, HC-03 Box 33512, Aguada P.R. 00602." During this investigation, Carlos CONCEPCION-RIVERA has been identified as a source of supply for kilogram quantities of cocaine who operates out of Aguada, Puerto Rico and the nearby vicinity. Based upon their training, experience, and familiarity with the investigation, case agents believe the parcel Vladimir shipped contained drug proceeds destined for CONCEPCION-RIVERA.

### Interception of Wire and Electronic Communication

41. On August 7, 2019, at approximately 7:04 p.m., case agents intercepted a TARGET TELEHPONE-5 call between GONZALEZ-COLLADO and Jose M. AVILES-GONZALEZ. During the call GONZALEZ-COLLLADO advised he was at **Stadium Self Storage**. He told AVILES-GONZLAEZ, "we are here on Burnham – the storage on Burnham." AVILES-GONZALEZ was unfamiliar with this storage unit so GONZALEZ-

COLLADO further explained and said, "On Burnham. Burnham. Over here. Almost on forty something, past 35th. The yellow and blue ones." It should be noted, the **Stadium Self Storage** buildings at **4000 W. Burnham St., Milwaukee, Wisconsin** are painted blue and the doors to the units are yellow. At 7:04 p.m., case agents' review of TARGET TELEHPONE-5's positional data revealed that the phone's location within 14 meters of 4000 W. Burnham Street, Milwaukee, Wisconsin. A review of TARGET TELEPHONE-5's positional data revealed that at 7:14 p.m., TARGET TELEHPONE-5 was within nine (9) meters of 4000 W Burnham Street, Milwaukee, Wisconsin. At 7:17 p.m., a Milwaukee Police Department Sergeant observed a black Audi (PA-KZM0607) parked in front of **Stadium Self Storage** on **4000 W. Burnham Street**. During the course of this investigation, GONZALEZ-COLLADO has been seen driving this vehicle. At 7:20 p.m., positional data for TARGET TELEHPONE-5 revealed the phone's location to be within 21 meters of 4000 West Burnham Street.

42.     On September 14, 2019, case agents intercepted calls between GONZALEZ-COLLADO and Jose BURGOS-RIVERA, another DTO member. At approximately 1:07 p.m., GONZALEZ-COLLADO instructed BURGOS-RIVERA, "Get a bag ready, in case you are leaving to Philadelphia with me today." At approximately 4:50 p.m., BURGOS-RIVERA stated, "Hey, I think I can leave it at my daughter's house." GOZALEZ-COLLADO replied, "No, well we can also leave it at the storage, the one on Burnham up there." They both agreed to leave it (a vehicle) at the storage unit. BURGOS-RIVERA stated, "It's safer over there, yeah." GONZALEZ-COLLADO responded, "Well, I'm on my way to clean up the truck. If you want head out to the storage." GONZALEZ-COLLADO later reminded BURGOS-RIVERA of the location by saying, "The one on Burnham, over there near 40 something." Based upon their training, experience, and familiarity with the investigation, case agents believe GONZALEZ-COLLADO told BURGOS-RIVERA that he could park his vehicle inside of the storage unit at **Stadium Self Storage**, which is approximately one block east of the intersection of Burnham Street and 43rd Street, while they both traveled to Philadelphia, Pennsylvania on drug related business.

43.     On September 17, 2019, at 8:11 p.m., TARGET TELEPHONE-6 (i.e., Hector Yamil RODRIGUEZ-RODRIGUEZ) sent a text to (414) 364-2867, used by Vladimir RODRIGUEZ-RODRIGUEZ. The intercepted text read: "How many did he give." A few minutes later, at 8:13 p.m., TARGET TELEPHONE-6 (i.e., Hector Yamil) received a call from (414) 364-2867 (i.e., Vladimir). During the intercepted call, Vladimir said, "For the drugs it was 2,690 and for cocaine it was 4-5," indicating the prices a customer paid for illegal drugs. Hector Yamil replied, "Alright then."

44.     On September 27, 2019, a series of phone calls were intercepted on TARGET TELEPHONE-9 (i.e. GONZALEZ-COLLADO). At approximately 12:01 p.m., GONZALEZ-COLLADO placed an intercepted call to APONTE-LEBRON, using (414) 501-6426 (previously TARGET TELEPHONE-2). During the intercepted call, GONZALEZ-COLLADO asked "So you are at the storage?" APONTE-LEBRON advised "Yes." After a brief conversation, GONZALEZ-COLLADO asked APONTE-LEBRON, "Is there 3.5 left in there." Based upon their training, experience and knowledge of the investigation, case agents believe "3.5" (a/k/a "eight ball," "8" or 1/8th ounce) is a quantity of cocaine commonly sold in the illicit narcotics market. After APONTE-LEBRON confirmed that there were 3.5 grams of cocaine at the storage unit location, GONZALEZ-COLLADO directed APONTE-LEBRON to deliver the cocaine to Vladimir by stating, "Take one and take it to Vlado (i.e.Vadimir RODRIGUEZ-RODRIGUEZ), over on 15th." Based upon their training, experience and knowledge of the investigation, case agents believe the residence on "15th" is reference to the home of Vladimir RODRIGUEZ-RODRIGUEZ located at 2166 South 15th Street, Milwaukee, Wisconsin. APONTE-LEBRON asked, "To Vlado?" GONZALEZ-COLLADO confirmed, "Yes, to Vlado, yes." GONZALEZ-COLLADO then advised that he (GONZALEZ-COLLADO) would inform Vladimir that APONTE-LEBRON would deliver the illegal substance to Vladimir RODRIGUEZ-RODRIGUEZ later that day.

45.     On September 27, 2019, at approximately 2:57 p.m., Vladimir, placed an intercepted call to GONZALEZ-COLLADO (i.e. TARGET TELEPHONE-9). During the call, the parties greeted and Vladimir asked, "What time is Viejo [APONTE-LEBRON]

18

bringing me that?" (Vladimir is questioning when the illicit substances would be delivered to Vladimir). GONZALEZ-COLLADO responded, "I told him after 1:00 p.m. because you had said that you were going there (get a haircut), was the thing." Vladimir responded, "After 2:00 already!" GOZALEZ-COLLADO asked Vladimir, "Where are you?" and Vladimir advised, "I'm on 15th. Here." GONZALEZ-COLLADO stated that he would send APONTE-LEBRON over to Vladimir's residence. Vladimir asked for the cost of the illegal narcotics by stating, "Go ahead mad. How much does that cost?" GONZALEZ COLLADO advised "200" ($200). Vladimir repeated "How much?" GONZALEZ-COLLADO replied, "200. An 8 [3.5 grams or 1/8th ounce] and one gram, right?" Vladimir asked, "200 for all?" GONZALEZ-COLLADO confirmed, "Yes." At approximately 2:59 p.m., GONZALEZ-COLLADO (i.e. TARGET TELEPHONE-9) placed an intercepted call to APONTE-LEBRON, directing APONTE-LEBRON to deliver the cocaine to Vladimir.

46.     On December 11, 2019, a series of phone calls were intercepted on TARGET TELEPHONE-9 (i.e. GONZALEZ-COLLADO). At approximately 3:18 p.m., GONZALEZ-COLLADO placed an intercepted call to Vladimir. During the intercepted calls, GONZALEZ-COLLADO said, "Listen I am going to stop by to get the keys to your storage so I can take the Civic out." Vladimir replied "Okay.   That's important." GONZALEZ-COLLADO asked Vladimir, "What was I going to tell you? That white is there right?" Based upon their training, experience and knowledge of the investigation, case agents know that "white" is a coded word for cocaine. After a brief conversation, Vladimir said, "Well, I don't know, fucker. I just... you yourself took it."

### Subpoenas Related to Stadium Storage

47.     On December 2, 2019, a case agent served a subpoena on **Stadium Self Storage**.   The examination of the rent roll record revealed that a RODRIGUEZ-RODRIGUEZ rents **storage unit number "4510"** which is a 10' x 25' unit.   RODRIGUEZ-RODRIGUEZ is charged $170.00 per month and the lease date began on October 4, 2018.

48.     On December 9, 2019, a case agent served a subpoena on **Stadium Self Storage.**   An examination of the records revealed that a Vladimir RODRIGUEZ rents

19

storage unit number **"4510,"** and was accessed on December 5, 2019, at approximately 10:51 a.m. As of January 3 2020, an examination of records reveal that Vladimir RODRIGUEZ remains the renter of this unit.

### b. Unit 9031

49.     On July 1, 2019, a case agent conducted surveillance at GONZALEZ-COLLADO's residence, located at 6652 North 43rd Street, Milwaukee, Wisconsin. At approximately 12:44 p.m., a blue 2003 Toyota Corolla bearing Wisconsin license plate number 247ZML pulled in and parked in GONZALEZ-COLLADO's driveway. A check with the Wisconsin Department of Transportation revealed that the license plate on the Corolla listed to Julia GRACIA-GALARZA at 4565 South 23rd Street, Apartment 4, Milwaukee, Wisconsin. Julio SEDA-MARTINEZ, a known associate of GONZALEZ-COLLADO, walked up to the Corolla and greeted the occupants. A photograph was taken of the driver of the vehicle. In comparison with photographs from social media accounts of members of the GONZALEZ-COLLADO DTO, case agents identified the driver as Roberto GRACIA-GALARZA.

50.     As stated above, case agents served subpoenas on **Stadium Self Storage**. An examination of records also revealed that Roberto GRACIA-GALARZA rents **storage unit number "9031"** which is a 9′ x 30′ unit. GRACIA-GALARZA is charged $95.00 per month and the lease date began on September 1, 2018. As of January 3, 2020, a review of records reveal that GRACIA-GALARZA remains the renter of this unit.

### C. Public Storage
### a. Unit 1102

### Suspicious USPS Parcels Involving Marcos APONTE-LEBRON

51.     As described above, Marcos APONTE-LEBRON has been identified as a facilitator who obtained USPS suspected cocaine laden parcels from the Puerto Rican drug source, on behalf of GONZALEZ-COLLADO. APONTE-LEBRON works within the GONZALEZ-COLLADO DTO as a mid-level distributor of cocaine and handles distribution quantities of narcotics.

20

52.     Between May of 2019 to November of 2019, APONTE-LEBRON has been depicted on USPS surveillance video mailing 25 different USPS parcels suspected of containing drug proceeds to the Puerto Rican drug source, and other known source locations within the DTO, on behalf of GONZALEZ-COLLADO. The sender information depicted on hand written shipping labels for the 25 parcels have included fictitious sender addresses and fictitious names. None of the 25 parcels shipped by APONTE-LEBRON has displayed his name as the sender's name on the parcels shipping labels.

53.     On November 8, 2019, a parcel originating from western Puerto Rico, was delivered to 1968 South 8th Street, Milwaukee, Wisconsin. The parcel was addressed to Julio Martinez, who, according to a law enforcement database, and the Wisconsin Department of Transportation, is not associated with this address. USPS records showed the parcel weighed 8 lbs. 10 oz. Based upon this investigation, case agents believe the weight of the parcel is consistent with approximately two kilograms of cocaine. Law enforcement conducted surveillance on delivery of this parcel at 1968 South 8th Street. After the letter carrier delivered the parcel to this address, LABOY-SILVA, another DTO member, exited the residence and placed the parcel into the backseat of a Honda Odyssey. LABOY-SILVA later drove the Honda Odyssey to an alley behind 1968 South 8th Street and met with a black Nissan Titan being driven by APONTE-LEBRON and an unknown Hispanic male. LABOY-SILVA and APONTE-LABRON later departed the area.

54.     On November 22, 2019, a parcel originating from western Puerto Rico, was delivered to 5956 North 65th Street, Milwaukee, Wisconsin. The parcel was addressed to Julio Martinez. A review of USPS records revealed that the parcel weighed 3 lbs. 12 oz. Based upon this investigation, case agents believe the weight of the parcel is consistent with approximately one kilogram of cocaine. Law enforcement conducted surveillance on delivery of this parcel at 5956 North 65th Street. The USPS letter carrier delivered the parcel by placing it at the front door. After the parcel was delivered and the USPS letter carrier left the area, case agents observed the front door open slightly and an unknown subject pulled the package inside the residence. A case agent observed APONTE-LEBRON drive up to the residence in a black Nissan Titan. He exited his vehicle and was

21

handed the parcel from an unknown subject inside the house. APONTE-LEBRON walked back to his vehicle with the parcel and left the area.

## Interception of Wire and Electronic Communication

55. On August 8, 2019, case agents intercepted a call between APONTE-LEBRON and GONZALEZ-COLLADO. At approximately 9:49 a.m., APONTE-LEBRON told GONZALEZ-COLLLADO, in coded language, that he was at the storage unit getting "3" for "Macho" (DTO member Julio RAVERA-RAMIREZ). Based upon their training, experience, and familiarity with the investigation, case agents believe "3" is in reference to three (3) grams of cocaine to sell to RIVERA-RAMIREZ. GONZALEZ-COLLADO authorized APONTE-LEBRON to complete the deal.

56. On August 8, 2019, at 9:49 a.m., case agents' review of positional data for TARGET TELEPHONE-4 (APONTE-LEBRON0 revealed the phone's location within 19 meters of **5014 South 13th Street, Milwaukee, WI**. This location is the address for **Public Storage**. At 10:30 a.m., TARGET TELEPHONE-4 ping data again showed the phone's location within 19 meters of **Public Storage, 5014 South 13th Street, Milwaukee, WI**.

57. On August 13, 2019, case agents intercepted TARGET TELEPHONE-4 calls between APONTE-LEBRON and GONZALEZ-COLLADO. At approximately 5:10 p.m., GONZALEZ-COLLLADO instructed APONTE-LEBRON, in coded language, to pick up "56" so they can drive to Sheboygan, Wisconsin. Based upon their training, experience, and familiarity with the investigation, case agents believe "56" is referring to 56 grams of cocaine (approximately two ounces) to sell to a customer in Sheboygan. GONZALEZ-COLLADO told APONTE-LEBRON to hurry so they can leave from his house.

58. On August 13, 2019, at 5:37 p.m., the positional data for TARGET TELEPHONE-4 revealed that the phone's location was within nine meters of 13th Street and Layton Avenue in Milwaukee, Wisconsin. This is approximately two blocks north of **Public Storage,** located at **5014 South 13th Street, Milwaukee, WI**.

59. On August 13, 2019, at approximately 5:39 p.m., a case agent observed a black Nissan Titan truck parked in the 3100 row of the **Public Storage** located at **5014**

**South 13th Street, Milwaukee, WI**. The case agent observed unit door 3108 was open and no other vehicle(s) parked in the vicinity of the storage unit besides the Nissan Titan.

60.    On August 13, 2019, at 6:06 p.m., a review of positional data for TARGET TELEPHONE-4 placed the phone within 32 meters of **Public Storage,** located at **5014 South 13th Street, Milwaukee, WI**.

61.    On August 13, 2019, at approximately 6:11 p.m., the case agent observed APONTE-LEBRON and an unknown female leave the storage unit.

62.    On August 16, 2019, a case agent served a subpoena on **Public Storage**. An examination of records revealed unit 3108 was rented by APONTE-LEBRON and the monthly fee of $185.00 was paid through August 31, 2019.

63.    On December 2, 2019, a case agent served a subpoena on **Public Storage**. An examination of records revealed that **unit 1102** is rented by APONTE-LEBRON with a monthly fee of $196.00 being paid for a 10' x 35' unit. As of January 3, 2020, a review of Public Storage records revealed that APONTE-LEBRON remains the renter of this unit.

### b. Unit 3326

### Suspicious USPS Parcels Involving Enid MARTINEZ

64.    Enid MARTINEZ, the "wife" of APONTE-LEBRON, has been identified as a parcel courier who ships USPS suspected drug proceeds laden parcels, on behalf of the GONZALEZ-COLLADO DTO, to the Puerto Rican drug source. Video surveillance footage from numerous USPS facilities in the Milwaukee area show MARTINEZ providing postal employees with parcels (i.e., containing suspected drug proceeds) that were mailed to various locations in Puerto Rico. Through intercepted calls, the investigation has also established that MARTINEZ sells cocaine on behalf of the DTO.

65.    From April 2019 to October 2019, MARTINEZ has been depicted on USPS surveillance video shipping 13 different parcels from various Post Offices in Milwaukee, Wisconsin using several different sender names, fictitious sender addresses, and real

23

sender addresses for which she is not associated.[2] The 13 different parcels were shipped to various municipalities throughout western Puerto Rico and to Mission, Texas. Out of all the packages she shipped, MARTINEZ never used her real name on the shipping labels. Based upon their training, experience, and familiarity with the investigation, case agents believe that because MARTINEZ shipped all 13 parcels using various sender names, not using her own name on any of the shipping labels, and the parcels were all destined for known drug source locations, case agents believe all 13 parcels she shipped contained drug proceeds.

66.     For example, on April 18, 2019, MARTINEZ was depicted on USPS surveillance video shipping USPS Priority Mail parcel 9505513465969108236296 from the Tuckaway Post Office, located at 5114 South 27th Street, Milwaukee, Wisconsin. A review of USPS records revealed that the parcel weighed approximately 5 lbs. 4 oz. The parcel's shipping label indicated it was from "Luis Perez, 2426 W Grant St, Milwaukee Wi 53215." The parcel bore a handwritten label addressed to "Ramiro Perez, Hc 2 Box 8423, Las Marias P.R. 006702." Las Marias is a municipality in western Puerto Rico. Through the investigation, case agents have learned western Puerto Rico is the location of operation for the Puerto Rican drug source. Based upon their training, experience, and familiarity with the investigation, case agents are aware that controlled substances are frequently transported from Puerto Rico via the USPS, and the proceeds from the sale of the controlled substances are frequently returned to Puerto Rico via the USPS. A search of a law enforcement database revealed that no person by the name of Luis Perez currently lives, or has lived, at 2426 West Grant Street, Milwaukee, WI 53215.

67.     As another example, on June 26, 2019, MARTINEZ was depicted on USPS surveillance video shipping USPS Priority Mail parcel 9505515217029177112279 from the Harbor Post Office, located at 1416 South 11th Street, Milwaukee, Wisconsin. A review of USPS records revealed that the parcel weighed approximately 6 lbs. 5 ounces. The

---

[2] Through this section, I make reference to the depiction of MARTINEZ on post office surveillance videos. I have compared these videos to surveillance and a known picture of MARTINEZ, and I am able to positively identify her through this comparison.

parcel's shipping label indicated it was from "Juan C. Valles, 2428 W Grant St, Milwaukee Wi 53215." The parcel bore a handwritten label addressed to "Tino Valles, 7311 Rosa St., Mission Tx. 78574." A search of a law enforcement database revealed a person by the name of Celestino Valles currently lives, or has lived, at 7311 Rosa Street, Mission, Texas 78574. Through the investigation, case agents have learned several addresses in Mission, Texas are destination locations for parcels shipped by various members of the GONZALEZ-COLLADO DTO. Based upon their training, experience, and familiarity with the investigation, case agents are aware controlled substances are frequently transported from Texas via the USPS, and the proceeds from the sale of the controlled substances are frequently returned to Texas via the USPS.

68. As another example, on September 17, 2019, while conducting routine parcel screenings at the Harbor Post Office, located at 1416 South 11th Street, Milwaukee, Wisconsin, I located a suspicious parcel: USPS Priority Mail parcel 9505515217019260139672. A review of the Harbor Post Office surveillance video revealed the parcel was shipped by MARTINEZ. A review of USPS records revealed that the parcel weighed approximately 5 lbs. 12 ounces. The parcel's shipping label indicated it was from "Eriberto Gonzalez, 2371 S 7 ST, Milwaukee WI 53215." The parcel bore a handwritten label addressed to "Moises Gonzalez, Balboa 33 PMB 204, Mayaguez P.R. 00680." Between June of 2019 to October of 2019, twelve different suspected drug proceeds packages have been shipped to Balboa 33 PMB 204, Mayaguez, Puerto Rico by various members of the GONZALEZ-COLLADO DTO to include, but not limited to, Julio SEDA-MARTINEZ, Hector Yamil RODRIGUEZ-RODRIGUEZ, MARTINEZ, and Marcos APONTE-LEBRON who is the husband of MARTINEZ. A search of the USPS database revealed the sender's address, 2371 South 7th Street, Milwaukee, WI 53215, to be a fictitious address. On September 18, 2019, I applied for and received a federal sneak and peek search warrant issued by United States Magistrate Judge William E. Duffin in the Eastern District of Wisconsin for this parcel. Upon execution of the search warrant, case agents discovered the parcel contained $29,980.00 in small denominations of U.S. currency wrapped in saran wrap, carbon paper, and was contained inside vacuum sealed

25

bags. After documenting the contents of the parcel, I repackaged the parcel and placed it back into the USPS mail stream for delivery.

69.     As another example, on October 21, 2019, MARTINEZ and APONTE-LEBRON were depicted on USPS surveillance video shipping USPS Priority Mail parcel 9505512777399294292588 from the West Milwaukee Post Office, located at 4300 West Lincoln Avenue, Milwaukee, Wisconsin. A review of USPS records revealed that the parcel weighed approximately 6 lbs. 15 oz. The parcel's shipping label indicated it was from "Miguel Perez, 1862 S 7th St, Milwaukee Wi 53204." The parcel bore a handwritten label addressed to "Radame Perez, HC 2 Box 8423 Maravilla Norte, Las Marias P.R. 00670." A search of the USPS database revealed the sender's address, 1862 South 7th Street, Milwaukee, WI 53204, to be a fictitious address.

### Interception of Wire and Electronic Communication

70.     On September 13, 2019, United States District Judge, J.P. STADTMUELLER, authorized the (1) Interception of Wire and Electronic Communication, (2) the Real Time Seizure of Requested Location Information, and (3) the Use of a Pen Register and Trap and Trace Device for the T-Mobile Wireless Telephone Number (708) 970-3187 (hereinafter TARGET TELEPHONE-9). TARGET TELEPHONE-9 was also found to be utilized by GONZALEZ-COLLADO.

71.     On November 8, 2019, at approximately 5:16 p.m., APONTE-LEBRON placed a call to TARGET-TELEPHONE-9. During the intercepted communications between APONTE-LEBRON and GONZALEZ-COLLADO, both were discussing money, while MARTINEZ in the background asked, "How much it is?" GONZALEZ-COLLADO told APONTE LEBRON, "Put me on speaker." GONZALEZ-COLLADO advised, "Weigh them beforehand." APONTE-LEBRON said, "I will purchase a scale and I will weigh it right in front of her." GONZALEZ-COLLADO said later in the conversation, "Have your wife tell her that I will give it to her in order not to lose business. But, next time I will weigh it in front of her." The female's voice in the call was compared to known sample of MARTINEZ's voice – both of which were concluded to be from the same person. Based upon their training, experience, and familiarity with

the investigation, case agents believe MARTINEZ sold cocaine to a customer on behalf of GONZALEZ-COLLADO, and there was a discrepancy with the amount of cocaine sold to her customer. Case agents believe GONZALEZ-COLLADO told MARTINEZ and APONTE-LEBRON the cocaine needs to be weighed before a drug deal transaction takes place to avoid these discrepancies.

72. As stated above on December 2, 2019, a case agent served a subpoena on **Public Storage**. An examination of records revealed **unit 3326** is rented by MARTINEZ, APONTE-LEBRON's "wife," with a monthly fee of $86.00 being paid for a 10' x 10' unit. As of January 3, 2020, a review of Public Storage records revealed that MARTINEZ remains the renter of this unit.

### CANINE HANDLER AND CANINE TRAINING AND EXPERIENCE

73. I know Police Officer (PO) Christopher CONWAY of the Milwaukee Police Department's High Intensity Drug Trafficking Area (HIDTA) Interdiction Unit is the current handler of the Drug Detection Canine "FLEXY," and that Police Officer Christopher CONWAY and "FLEXY" have received four weeks (200 hours) of intensive training and certification through Shallow Creek Kennels, deploying and utilizing a drug detection canine; that this certification is based on guidelines set forth by the North American Police Work Dog Association (NAPWDA) which is a nationally based group in partnership with local, state, federal and international agencies including private vendors, law enforcement and first responder; that this training establishes consensus-based best practices for the use of detection canine teams by improving the consistency and performance of deployed teams which will improve interdiction efforts as well as courtroom acceptance.

74. PO Conway has explained to Inspector Fink that Shallow Creek Kennels utilizes independent evaluators to certify each drug detection canine team; that these evaluators that certified Drug Detection Canine "FLEXY" have been certifying drug detection canines since the year 2004; that the first evaluator and owner is John Brannon. John Brannon's career in Law Enforcement spans a 24 year period with 22 years having been spent as a K9 officer working five dual purpose Police Service Dogs. For

approximately, 20 years John was employed by the Coral Springs Police Department, Broward County Florida where he was responsible for all the day to day operations of the K9 unit. Additionally, while with Coral Springs, John was an active Special Response Team member and the S.R.T canine team leader. John is a certified State of Florida K9 Instructor since 1993 and is a Florida Department of Law Enforcement Trainer Evaluator. In 2004, John established Shallow Creek Kennels located in Sharpsville, Pennsylvania. Shallow Creek Kennels is an Ohio Peace Officer's Training Academy and Florida Department of Law Enforcement certified training facility. John's professional memberships include: Master Trainer for the North American Police Work Dog Association and past President of Pennsylvania Police Work Dog Association.

75.    PO Conway also explained a second evaluator is Jeremy Riley. Riley entered the United States Army, where he served five years as a Military Working Dog Handler. During his Military career he worked two dual purpose military working dogs achieving the rank Specialist and was deployed to Korea as well as Bosnia. He then became a police canine handler for the Henderson County Sheriff's Office in North Carolina where he worked three dual purpose police service dogs for 11 years. Riley was his agency's unit trainer. Jeremy Riley is also a member of the North American Police Working Dog Association.

76.    PO Conway explained a third evaluator is Mike Van Leer who became a State Certified Canine Instructor for the Florida Highway Patrol in 1993. He then became the first and only current State Certified Evaluator for the Florida Highway Patrol in 1996. He is the first canine trainer/evaluator in the State of Florida qualified to teach and certify narcotic detection canines under a national program, the International Forensic Research Institute at Florida International University. As a canine instructor/evaluator, Trooper Van Leer has trained over 65 police canine teams in the areas of narcotic detection, tracking and patrol work. Trooper Van Leer has over 2,000 academic hours in the training of Police Working Dogs.

77.    PO CONWAY is the current handler of the Drug Detection Canine "FLEXY," and that "FLEXY" is trained to detect the odor of controlled substances; that

Case 2:20-mj-00805-WEC   Filed 01/30/20   Page 29 of 33   Document 1

these substances include marijuana, cocaine, heroin, methamphetamine, etc., as well as other dangerous drugs due to chemical processing similarities; that upon location of the odor of these controlled substances, the dog's behavior will change; that the dog is trained to come to a final indication or response of a sit at the source of the odor; that this final indication or response is called an "Alert;" furthermore, this final indication or response or "Alert" may also indicate items recently contaminated with, or associated with, the odor of one or more of the controlled substances.

78. According to PO CONWAY, the current handler of the Drug Detection Canine "FLEXY," when a dog is trained to detect a substance that it learns to discriminate the odor vapor of that substance from other odors in the environment by reacting to the compound(s) that best help it earn reinforcement from the drug detection canine handler; that with sufficient training, the compound(s) whose detection most often results in reinforcement becomes the "odor detection signature."

79. According to PO CONWAY, his Drug Detection Canine "FLEXY" has detected controlled substances more than "300" times in the past which included training; that in each alert drugs that "FLEXY" is trained to find have been recovered or a drug nexus has been found; that "FLEXY" alerts have been the basis for more than (10) search warrants and the search of motor vehicles; that in each alert, drugs that "FLEXY" is trained to find have been recovered or a drug nexus has been found; that the canine has been used in these motor vehicle searches during training and in the execution of search warrants in the past and that during these searches the canine has located controlled substances for the officers resulting in the arrest and issuance of charges pending against these individuals.

80. Based upon the above information, I believe probable cause exists, that the items described in Attachment B, which are evidence of violations of Title 21, U.S.C. Sections 841 and 846, as well as contraband, fruits of a crime, or other items illegally possessed are located at U-Haul Moving & Storage, 1500 S. 1st Street, Unit 1310, Milwaukee, Wisconsin, Stadium Self Storage, 4000 West Burnham Street, Unit 9031, Milwaukee, Wisconsin, Stadium Self Storage, 4000 West Burnham Street Unit 4510,

29

Milwaukee, Wisconsin, Public Storage, 5014 S. 13th Street, Unit 3326, Milwaukee, Wisconsin and Public Storage 5014 S. 13th Street, Unit 1102, Milwaukee, Wisconsin. therefore request that this court issue a warrant to search the above referenced locations and to seize the items specified in Attachment B.

Stadium Self Storage, 4000 West Burnham Street, Unit 9031, in Milwaukee, Wisconsin, is located on West Burnham Street, two businesses east of Miller Park Way on the north side of the street. The main building is a brick two-story building. The main entrance is located directly off West Burnham Street on the southwest corner of the main building. The numbers "4000" is affixed directly above the main entry door. There is a metal gate that surrounds the buildings. There are four additional storage unit buildings on the property located to the west of the main building.





## **ATTACHMENT B**
### *Items To Be Searched*

A. The odor vapor of the following controlled substances which can be detected by the drug detecting K-9, "Flexy," emanating from the target address.

1. The odor of Marijuana – a greenish plant like substance
2. The odor of cocaine – a white, powdery or off-white chunky substance
3. The odor of heroin – a tan or grey, chunky and/or powdery substance
4. The odor of fentanyl – a white, powdered or chunky substance
5. The odor of methamphetamine – a clear or off-white substance with a "glass-like" appearance.

B. This warrant does not authorize the seizure of any tangible property.